UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRAFALGAR POWER INC. and
CHRISTINE FALLS CORPORATION,

        Plaintiffs,

 vs           5:99-CV-1238
               (Lead Case)

AETNA LIFE INSURANCE COMPANY;
ALGONQUIN POWER CORPORATION,
INC.; ALGONQUIN POWER INCOME
FUND; and ALGONQUIN POWER FUND
(CANADA) INC.;

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALGONQUIN POWER CORPORATION, INC.;
ALGONQUIN POWER INCOME FUND; and
FRANKLIN INDUSTRIAL COMPLEX, INC.;

        Plaintiffs,

 vs           5:00-CV-1246
               (Member Case)

TRAFALGAR POWER, INC.; CHRISTINE
FALLS CORPORATION; and PINE RUN OF
VIRGINIA, INC.;

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
IN RE:
MARINA DEVELOPMENT, INC.; FRANKLIN INDUSTRIAL
COMPLEX, INC.; CHRISTINE FALLS OF NEW YORK, INC.;
TRAFALGAR POWER, INC.; PINE RUN OF VIRGINIA, INC.;

           Debtors
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARINA DEVELOPMENT, INC.; TRAFALGAR
POWER, INC.; CHRISTINE FALLS OF NEW
YORK, INC.; FRANKLIN INDUSTRIAL COMPLEX,
INC.; and PINE RUN OF VIRGINIA, INC.;

           Plaintiffs,
    vs              ADV. PRO. NO. 02-80005

ALGONQUIN POWER CORPORATION, INC.;
ALGONQUIN POWER SYSTEMS, INC.; ALGONQUIN
POWER FUND (CANADA), INC.; ALGONQUIN
POWER INCOME FUND; ALGONQUIN POWER
SYSTEMS NEW HAMPSHIRE, INC.; ALGONQUIN
POWER (U.S.) HOLDINGS, INC.; AETNA LIFE
INSURANCE COMPANY; CIT CREDIT GROUP,
INC., fka NEWCOURT CREDIT GROUP, INC.;
CANADIAN INCOME PARTNERS I LIMITED
PARTNERSHIP;
           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HARRIS BEACH PLLC<br>Attorneys for Trafalgar Power Parties<br>99 Garnsey Road<br>Pittsford, New York 14534 | PAUL J. YESAWICH, III, ESQ. |
| BOIS, SCHILLER & FLEXNER LLP<br>Attorneys for Marina Development, Inc.<br>333 Main Street<br>Armonk, New York 10504 | EDWARD J. NORMAND, ESQ.<br>JASON CYRULNIK, ESQ. |
| BURNS & SCHULTZ LLP<br>Attorneys for Aetna Life Insurance Co.<br>28 East Main Street, Suite 900<br>Rochester, NY 14614 | ANDREW M. BURNS, ESQ. |

MENTER RUDIN & TRIVELPIECE            MITCHELL J. KATZ, ESQ.
Attorneys for Algonquin Power Parties  THERESA M. BENNETT, ESQ.
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1498

RACKEMANN SAWYER & BREWSTER           ALAN B. RUBENSTEIN, ESQ.
Attorneys for Algonquin Power Parties
One Financial Center
Boston, MA  02111

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

On November 6, 2008, a Memorandum-Decision and Order was entered granting the Algonquin parties' (collectively "Algonquin") motion for summary judgment and dismissing all claims by Trafalgar Power, Inc. ("TPI") and Christine Falls Corporation ("CFC") (collectively "Trafalgar") and denying Trafalgar's motion to amend the complaint.  Further, all of Algonquin's counterclaims were dismissed and the action was dismissed in its entirety.  A judgment was entered accordingly.

Trafalgar moves for relief from the judgment pursuant to Fed. R. Civ. P. 60(b)(2).  Aetna Life Insurance Company ("Aetna") and Algonquin separately oppose.  The motion was taken on submission without oral argument.

## II.  BACKGROUND

Detailed factual background and procedural history may be found in prior decisions in this case, the engineering malpractice case, and the bankruptcy proceedings. See Trafalgar Power Inc. v. Aetna Life Ins. Co., 396 B.R. 584 (N.D.N.Y. 2008); Algonquin Power Income Fund v. Christine Falls of N.Y., Inc., 396 B.R. 106 (N.D.N.Y. 2008); Trafalgar

Power, Inc. v. Aetna Life Ins. Co., 427 F. Supp. 2d 202 (N.D.N.Y. Apr. 12, 2006); Trafalgar Power, Inc. v. Aetna Life Ins. Co., Nos. 99-CV-1238, 00-CV-1246, 2001 WL 640908 (N.D.N.Y. May 23, 2001); Trafalgar Power, Inc. v. Aetna Life Ins. Co., 146 F. Supp. 2d 155 (N.D.N.Y. Apr. 23, 2001) (McCurn, J.); Trafalgar Power, Inc. v. Aetna Life Ins. Co., 131 F. Supp. 2d 341 (N.D.N.Y. Jan. 16, 2001) (McCurn, J.) (adopting the Report Recommendation found at Algonquin Power Corp., Inc. v. Trafalgar Power, Inc., No. 00-CV-1246, 2000 WL 33963085 (N.D.N.Y. Nov. 8, 2000) (Peebles, M.J.)); Hydro Investors, Inc. v. Trafalgar Power, Inc., 63 F. Supp. 2d 225 (N.D.N.Y. 1999) (denying post-trial motions), aff'd in part, vacated & remanded in part, 227 F.3d 8 (2d Cir. 2000) (vacating denial of prejudgment interest and remanding for calculation of such interest); see also In re Franklin Indus. Complex, Inc., Nos. 01-67459, 01-67458, 01-67457, 2008 WL 3992233 (Bankr. N.D.N.Y. Aug. 21, 2008); In re Franklin Indus. Complex, Inc., Nos. 01-67459, 01-67458, 01-67457, 2008 WL 3200244 (Bankr. N.D.N.Y. Aug. 5, 2008); In re Franklin Indus. Complex, Inc., 386 B.R. 5 (Bankr. N.D.N.Y. Apr. 8, 2008); In re Franklin Indus. Complex, Inc., 377 B.R. 32 (Bankr. N.D.N.Y. Oct. 30, 2007); In re Franklin Indus. Complex, Inc., Nos. 01-67459, 06-80254, 01-67458, 01-67457, 2007 WL 2509709 (Bankr. N.D.N.Y. Aug. 30, 2007).  The facts are set forth only in sufficient detail to provide context for the analysis.

Algonquin Power Corporation, Inc. ("Algonquin Power") is the manager of hydroelectric power plants owned by Trafalgar.  The management arrangement between them was governed by a Management Agreement that became effective January 15, 1996.  As part of Trafalgar's restructured debt, State Street Bank became the Security Trustee to receive revenues and disburse operating funds, including Algonquin Power's management fee, for the plants at Algonquin's direction.

The restructured debt consisted of A and B Notes and a Line of Credit, the terms of which were set forth in an Indenture Agreement. TPI's parent company Marina Development, Inc. ("Marina"), pledged all of the stock of TPI, and TPI pledged all of the stock of CFC, to secure the Notes. Thus, Trafalgar (TPI and CFC collectively) was the security for the restructured debt.

Algonquin purchased the B Note from Aetna in 1997. At least a couple of Algonquin entities had ownership of the B Note, however, those transfers of ownership are irrelevant here except to the extent that it is acknowledged that they occurred.

Algonquin purchased the A Note after its purchase of the B Note. The A Note has since been paid off.

Although challenged by Trafalgar, Aetna's sale of the B Note to Algonquin was upheld in prior proceedings. See 427 F. Supp. 2d at 212. The effect of Algonquin's ownership of the B Note is that Trafalgar cannot terminate Algonquin Power as the manager of the hydroelectric projects.

Additional facts or background that Trafalgar raises as relevant to the current motion will be set forth in the discussion below.

### III. STANDARD--Rule 60(b)

"On motion and upon such terms are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon

which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

Clerical mistakes may be corrected at any time and motions grounded upon mistake, inadvertence, excusable neglect, newly discovered evidence, and fraud must be made within one year. Id. 60(a)-(c). Otherwise, such motions must be made within a reasonable time. Fed. R. Civ. P. 60(b).

In order to obtain relief from judgment based upon newly discovered evidence, the party must establish that the evidence "'was of facts that existed at the time of trial,'" the party was "'justifiably ignorant'" of the facts although due diligence was exercised, "the evidence must be admissible and of such importance that it probably would have changed the outcome,'" and the evidence is not "'merely cumulative or impeaching.'" U.S. v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) (quoting U.S. v. Int'l Bhd. of Teamsters, 179 F.R.D. 444, 447 (S.D.N.Y. 1998) (internal quotation omitted)). "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." Id. at 391 (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1142 (2d Cir. 1994); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)). The burden of meeting this "onerous standard" for relief is on the moving party. Id. at 392.

## IV. DISCUSSION

Trafalgar seeks relief from the judgment dismissing Trafalgar's three claims regarding the Notes: (1) breach of implied covenant of good faith and fair dealing against Aetna; (2) breach of fiduciary duty against Aetna; and (3) tortious interference with contractual relations against Algonquin (collectively the "Note claims"). Trafalgar also seeks

relief from the judgment denying its motion for leave to file an amended complaint asserting RICO claims.

On November 21, 2008, Trafalgar filed its motion for relief from the judgment of November 6, 2008, based upon newly discovered evidence. Accordingly, Trafalgar's motion was timely. See Fed. R. Civ. P. 60(c) (motion grounded upon newly discovered evidence must be made within one year).

### A. Trafalgar's Contentions

The basis for Trafalgar's Note claims was that Aetna improperly refused to sell the B Note to Trafalgar and Algonquin had improperly induced Aetna's refusal. Trafalgar now argues that it has new evidence showing that these actions were improper, as follows. According to Trafalgar, an executive vice president of Aetna, Peter Nilsen ("Nilsen"), made the decision to sell the B Note to Algonquin. Nilsen testified in deposition that he made that decision because Trafalgar had not properly exercised its right of first refusal. He also testified that he did not have any Swiss bank accounts and he had no ties to Pictet & Cie, a large investor in Algonquin Power Income Fund. Trafalgar contends it now can demonstrate that Nilsen may not have been truthful.

Trafalgar also points to evidence that it has obtained allegedly establishing that Pictet & Cie funded private, numbered, Swiss bank accounts for several Algonquin principals, Aetna's Nilsen, a senior executive at State Street Bank, and three Algonquin attorneys. These accounts were funded between October 2002 and September 2005. The purported owners of these accounts including Nilsen deny their ownership.

Trafalgar's evidence of these accounts consists of an affidavit of its "international investigator and private consultant" Bernhart Schober. (Schober Decl. Doc.

No. 309-12.)  The declaration relates the purposes for which he was retained by "110302 Canada Inc." and states that the attached report details his results of the investigation into the offshore holdings of individuals related to Algonquin entities.  Id.  The report is dated November 30, 2008.  It states that multiple Swiss bank accounts were discovered that were owned by ten individuals involved with Algonquin (Algonquin principals and executive, Aetna executive, State Street Bank executive, and Algonquin attorneys).  The accounts were opened at varying times between September 2002 and September 2005.  Further, these Swiss bank accounts were uncovered in March 2008 (six individuals), May 2008 (two), June 2008 (one), and October 2008 (one).

Trafalgar contends that evidence of these Swiss bank accounts is newly discovered because it learned of them in depositions held in 2007; confirmed their existence at a later time; then only recently, after Nilsen's deposition in September 2008, discovered a written agreement in which Nilsen authorized Pictet & Cie to deposit the funds and manage the accounts.  Trafalgar argues that it acted diligently in discovering the information then waiting until it had a "critical mass of documentation" before bringing the evidence forward.

Trafalgar argues that a reasonable juror could infer from this evidence that Algonquin acquired the Notes to enable it to (1) make large distributions to its principals and to prevent Trafalgar from terminating Algonquin as manager and operator of the plants; (2) manufacture an improper Event of Default triggering its ability to obtain vast amounts of money in Trafalgar's accounts and operate without proper oversight from the Bank; (3) personally benefit Aetna and State Street Bank executives to induce them to sell the B Note to Algonquin and turn over Trafalgar's funds absent a legitimate event of default; (5) funnel money into Swiss bank accounts to hide it from tax authorities and other interested parties

such as Trafalgar; (6) have Pictet (rather than Algonquin) fund and manage the accounts; (7) use the accounts to hide personal benefit obtained by the Algonquin principals; (8) prevent Trafalgar from enforcing its subpoenas to obtain all documents concerning the accounts.

As to the breach of implied covenant of good faith and fair dealing claim against Aetna, Trafalgar argues that it is entitled to an inference that Aetna improperly put its own interests ahead of Trafalgar's interests. With regard to the breach of fiduciary duty claim against Aetna, Trafalgar again argues that the new evidence of Swiss accounts permits a reasonable juror to conclude that in selling the B Note to Algonquin, Aetna put its own private interests ahead of Trafalgar's, thereby violating its fiduciary duty. Again based on the new evidence, Trafalgar contends that a reasonable juror could conclude that Algonquin provided financial incentives to Aetna to overlook its obligations of good faith and fair dealing to Trafalgar and then sell the B Note to Algonquin instead of Trafalgar. Trafalgar argues that at the same time Algonquin was providing financial incentives to State Street Bank which then allowed Algonquin to declare a fabricated event of default giving Algonquin unfettered access to all of Trafalgar's funds. These inferences preclude summary judgment on its tortious interference with contractual relations claim against Algonquin, according to Trafalgar.

Finally, Trafalgar contends that the new evidence permits it to supplement its RICO claims providing significant additional support for the propriety of RICO claims. Trafalgar argues that the new evidence permits an inference that the private financial incentives and the arrangements among Algonquin, Aetna, and State Street Bank led "Algonquin to operate the enterprise of Algonquin entities as they have, to make the fraudulent misrepresentations Algonquin has made to Trafalgar for a decade, and to alter

and fabricate documents for use in the Bankruptcy Court just in the last few years." (Trafalgar Mem. at 20, Doc. No. 309.)

### B. Analysis

Nilsen's deposition took place in September 2008, prior to the judgment from which Trafalgar seeks relief. Nilsen's deposition testimony cannot be grounds for relief from the judgment because it was, in fact, known to Trafalgar prior to entry of the judgment.

As for the information about the Swiss bank accounts, Trafalgar's investigator discovered their alleged existence between March 2008 and October 2008, before judgment was entered. Thus, this evidence cannot be considered newly discovered. Further, these alleged Swiss accounts were funded in 2002, 2003, 2004, and 2005 according to the Schober report. There is no explanation or argument for how these allegedly improper financial incentives actually influenced the purported Swiss bank account owners to act improperly regarding the allegedly improper transactions that occurred in 1997 and 1999. Furthermore, Schober's report lacks any kind of authentication such as how the bank account information was obtained and verified as genuine, which would be particularly valuable given the affidavits of the purported owners denying ownership. In short, Schober's report lacks a foundation and therefore is not admissible.

Finally, there has been no showing that this evidence would have changed the outcome of the summary judgment motion. The issues on the Note claims were whether Trafalgar failed to properly execute its right of first refusal, and whether Algonquin manufactured a default. None of the Swiss bank account evidence pertains to either of these issues and therefore was irrelevant to their resolution.

With regard to Trafalgar's proposed RICO claims, a thorough analysis of the previous allegations, RICO pleading requirements, the law pertaining to the alleged underlying predicate acts, undue delay and potential prejudice was previously conducted. See Trafalgar Power Inc., 396 B.R. at 592-94.  It was concluded that there was undue delay in bringing RICO claims and undue prejudice would result from permitting assertion of RICO claims at that late date.  Id. at 594.  According to Trafalgar, with the new evidence

> juror[s] could infer that the arrangements among Algonquin, Pictet, Mr. Nilsen for Aetna and Mr. Wheeler for State Street Bank underscore undisclosed and private financial incentives that prompted Algonquin to operate the enterprise of Algonquin entities as they have, to make the fraudulent misrepresentations Algonquin has made to Trafalgar for a decade, and to alter and fabricate documents for use in the Bankruptcy Court just in the last few years.  The new information is evidence that the web of Algonquin's misconduct is even wider and stickier than Trafalgar had known, and that the propriety of the RICO claims to capture and redress that misconduct is more appropriate now than ever.

(Trafalgar Mem. at 20, Doc. No. 309.)  This is essentially Trafalgar's entire argument why RICO claims should be permitted based upon the new evidence.  See id. at 19-20.  This new evidence in no way contradicts the finding that there was undue delay in bringing RICO claims.  The new evidence also fails to mitigate the undue prejudice that would result from permitting Trafalgar to amend its complaint to assert RICO claims.  Trafalgar has not established that this new evidence would have changed the outcome as to its proposed RICO claims.  Moreover, the Swiss bank account evidence is merely cumulative--as stated by Trafalgar, it is "evidence that the web of Algonquin's misconduct is even wider and stickier" than previously known.  See id. at 20.

## V. **CONCLUSION**

Neither the Nilsen testimony nor the Swiss bank account evidence is newly discovered as it was available to Trafalgar prior to entry of the judgment.  Further, there has been no demonstration that the outcome would have changed in light of the purported new evidence with regard to the Note claims and the proposed RICO causes of action.  Finally, the purported new evidence is merely cumulative of alleged wrongdoing as to the RICO allegations.

Accordingly it is

ORDERED that Trafalgar's motion for relief from the judgment is DENIED

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 25, 2009
       Utica, New York.